Kathleen R. Thomas
New York State Bar No. 5348198
THOMAS LEGAL COUNSELORS AT LAW, LLC
One World Trade Center
85th Floor, Suite 8500,
New York, NY 10007
Tel: 917-508-9698
Fax: 917-591-3335
Kat@tlclawllc.com

Margaret E. Mabie
New York State Bar No. 5760731
MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Fl.
New York, NY 10001
Tel: (212) 372-3030
Fax: (833) 210-3336
margaretmabie@marsh.law
*Attorneys for the Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| "Mark,"<br><br>Plaintiff,<br><br>v.<br><br>GILMOUR ACADEMY; TIMON S. VEACH, individually and as an agent of Defendant GILMOUR ACADEMY; MICHAEL CHIELLINO; individually and as an agent of Defendant GILMOUR ACADEMY; JOSEPH H. NOOK, III, individually and as an agent of Defendant GILMOUR ACADEMY; JONAH WILLIAMS, individually and as an agent of Defendant GILMOUR ACADEMY; MARK FERFOLIA, JR. individually and as an agent of Defendant GILMOUR ACADEMY; LIAM CLARKE; KYLE MEAD; and LOGAN CUVO, | Case No. **8:25-cv-1110 (GTS/DJS)**<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Defendants.

Plaintiff "Mark" by and through his attorneys, Thomas Counselors at Law, LLC, and Marsh Law Firm PLLC, as and for his Complaint in this matter against the above-captioned Defendants, hereby alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action alleging personal injuries sustained as a result of institutional negligence and failures and the sexual offenses perpetrated against him while he was a minor under the care of the above-named Defendants.

2.     Plaintiff further brings this action alleging personal injuries resulting from videos of Plaintiff being sexually assaulted and abused, which constitute child sexual abuse material ("CSAM"), which were captured, possessed, and then disseminated to others.

3.     This Action involves allegations against Defendant for the intentional and negligent acts and omissions which contributed to Plaintiff being a victim of child sexual abuse and exploitation and resulted in serious physical, psychological, and emotional harms suffered by Plaintiff.

4.     Plaintiff was less than eighteen (18) years of age at the time of the alleged criminal sexual assaults, abuse, and exploitation as defined by New York Penal Law Article 130 and 235.

5.     New York passed the Child Victim's Act (S. 2440) into Law on February 14, 2019. At that time, Plaintiff's time to commence this action had not expired for Plaintiff.

6.     As such, Plaintiff brings this action pursuant to New York's Child Victim's Act, which extended the Infancy tolling of the statute of limitations for Plaintiff's time to file until he reaches the age of fifty-five (55) (CPLR § 208-b)

**<u>CPLR 1603 – NO APPORTIONMENT OF LIABILITY</u>**

7.     Pursuant to CPLR 1603, the foregoing causes of action are exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602 and 1601(1), including but not limited to, CPLR 1602(2), CPLR 1602(5), 1602(7) and 1602(11), thus precluding Defendant from limiting their liability by apportioning some portion of liability to any joint tortfeasor.

**<u>JURISDICTION AND VENUE</u>**

8.     This Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States. Specifically, Plaintiff asserts claims under 18 U.S.C. § 2252 <u>and </u>18 U.S.C. § 2255.

9.     This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties have complete diversity, Plaintiff resides in Canada, and Defendants MICHAEL CHIELLINO, JOSEPH H. NOOK, III, MARK FERFOLIA, JR., and LIAM CLARKE reside in Ohio, with GILMOUR ACADEMY's principal place of business also in Ohio. Defendant TIMON S. VEACH resides in Pennsylvania. Defendant JONAH WILLIAMS resides in Minnesota. Defendant KYLE MEAD resides in Ohio and Kentucky. Defendant LOGAN CUVO resides in Ohio

10.     Venue in the United States District Court for the Northern District of New York is proper pursuant to 28 U.S.C. § 1402(b) as it is the judicial district in which the acts or omissions complained of occurred.

11.    Plaintiff "Mark" further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all New York State law claims and causes of action, including intentional torts, which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## PARTIES

12.    Plaintiff "Mark" (hereinafter "Plaintiff" or "Mark") is an adult resident of California.

13.    Plaintiff brings this Action pursuant to the pseudonymous name of "Mark" to protect his true identity as a victim of child sexual abuse and the subject of child pornographic videos and images.

14.    Plaintiff simultaneously moves this Court for an order allowing them to proceed in the above-captioned matter using a pseudonym.

15.    At all times material, Defendant GILMOUR ACADEMY (hereinafter "Gilmour" or "Defendant Gilmour") was and is a private boarding school, located at 34001 Cedar Rd, Gates Mills, OH 44040, duly organized and existing under and by virtue of the laws of the State of Ohio.

16.    At all times material, Defendant Gilmour owns, operates, controls, supervises, or otherwise manages the Gilmour Academy Hockey Program.

17.    At all times material, Defendant TIMON S. VEACH, Defendant MICHAEL CHIELLINO, Defendant JOSEPH H. NOOK, III, Defendant JONAH WILLIAMS, and Defendant MARK FERFOLIA, JR. (hereinafter collectively referred to as "Defendant Coaches") were working as employees and/or agents of Defendant Gilmour.

18.    Defendant LIAM CLARKE is an adult resident of Ohio.

19.    Defendant LOGAN CUVO is an adult resident of Ohio.

- 4 -

20.     Defendant KYLE MEAD is an adult resident of Ohio.

21.     At all relevant times, Defendant Gilmour and Defendant Coaches were charged with a duty to properly supervise and care for the welfare of Plaintiff and similarly situated students that were in its care, custody, supervision, and/or control.

## STATEMENT OF RELEVANT FACTS

22.     Upon information and belief, the facts and background currently known to the Plaintiff are as follows:

23.     Gilmour is a private boarding school in the State of Ohio that operates, among other divisions, a youth hockey program.

24.     At all relevant times, Gilmour was, and is, a full-time residential college preparatory school located at 34001 Cedar Road, Gates Mills, Ohio 44040

25.     At all relevant times, Mark was an elite youth hockey player.

26.     In the spring of 2021, Defendant TIMON S. VEACH reached out to Mark and invited him to join its 16U hockey team the following year. Mark researched Gilmour and was attracted to its academic program and the opportunity to develop as a hockey player and person. He agreed to their proposal to attend their school under scholarship and play hockey for Gilmour.

27.     Unbeknownst to Mark or his family, Gilmour's hockey program had a history of severe hazing that included sexually assaulting and exploiting younger boys in the program. Upon information and belief, this conduct was condoned by Defendant Gilmour and Defendant Coaches.

28.     Specifically, prior to 2022, Defendant Gilmour and Defendant Coaches were aware and/or should have been aware that older student athletes on the hockey team engaged in forcible touching, hazing, bullying, assaulting, and engaging in sexual misconduct perpetrated against the younger players or call-ups under the guise of participating in the "Gauntlet." The "Gauntlet" was

a known practice of the older hockey players hazing the younger players or call-ups by forcibly touching, bullying, name calling, groping, striking on the buttocks, and forcibly rubbing the young players and call-ups with their genitals.

29.     Prior to 2022, Defendant Gilmour, by and through, Defendant Coaches and other coaching staff, was aware of and/or should have been aware that the "Gauntlet" practice and custom of sexually assaulting the new recruits. Defendant Gilmour, by and through, Defendant Coaches and other coaching staff, willfully ignored the practice and refused to intervene.

30.     At all times relevant, Plaintiff was a full-time residential student and student athlete on the hockey team at Gilmour under the exclusive care, custody, and control of Defendant Gilmour.

31.     From January 14, 2022 through January 17, 2022, Mark traveled with Defendant Gilmour's hockey team to Lake Placid for the Northwood Invitational Hockey Tournament.

32.     The following individuals were present on the January 14, 2022 through January 17, 2022 Northwood Invitational Hockey Tournament trip ("Tournament trip"): Plaintiff Mark, Defendant Coaches, Defendant Kyle Mead, Defendant Liam Clarke, and Defendant Logan Cuvo, and other hockey team members from Gilmour.

33.     Plaintiff was sixteen (16) years old at the time of the Tournament trip.

34.     The hockey team members and coaches stayed at the Lake Placid Summit Hotel and Suites located at 2375 Saranac Ave, Lake Placid, NY, for the duration of the Tournament trip.

35.     For the duration of the Tournament trip, Defendant Coaches did not properly supervise the hockey team members in connection with their stay at the Hotel. Further, Defendant Coaches did not inspect, monitor, or have any system in place to ensure that all team members were safely in their hotel rooms at night.

36.    Defendant Coaches did not direct room assignments that would have appropriately separated the younger and older members.

37.    As a result of Defendant Coaches failure to properly supervise and monitor the members, Mark, a younger 16U member, was physically forced by the older 18U or "Prep" members to sleep on their side of the hotel room with them without any other 16U members on that side of the hotel room.

38.    During the entire stay at Lake Placid Summit Hotel and Suites, Defendant Coaches stayed several rooms down the hall, or in some cases on a different floor, from the room where Mark and the other team members stayed.

39.    Mark never saw or spoke to any coaches while he was in the hotel room.

40.    Defendant Coaches did not supervise, monitor, inspect, or otherwise provide any appropriate supervision of the young hockey team members while the members were in the hotel room.

41.    Defendant Coaches did not properly set rules or otherwise provide guidance on the proper behavior and conduct required for the Tournament trip.

42.    During the entire Lake Placid Tournament trip from January 14 – 17, 2022, Plaintiff remained under the exclusive care, custody, and control of Defendant Gilmour.

43.    On every night of the trip (January 14th, 15th, and 16th), Defendant Kyle Mead and at least one other member of the 18U team sexually abused, forcibly touched, and attempted to sexually assault Mark.

44.    On the first night, January 14, 2022, Defendant Liam Clarke came out of the hotel bathroom claiming that he just "came all over the place," indicating that he had just taken a shower and masturbated in the bathtub and toilet.

45.    On every night of the trip (January 14th, 15th, and 16th), Defendant Kyle Mead took off his underwear, lunged at Mark, and forcibly pressed his genitals onto Mark, and forcibly touched, sexually abused, and attempted to rape him. Defendant Mead also tried several times to get on top of Mark to complete his sexual assault of him; however, Mark was able to force Defendant Mead off.

46.    On the morning of January 16, 2022, Mark went to take a nap. Defendants Kyle Mead and Liam Clarke jumped on him, fully naked. Mark told them to stop and attempted to push Defendants off of him, however they continued unphased. They waived their fully exposed penises around Mark and were whacking him, lunging penis first at him, touching his buttocks with their bare penises, and attempting to rape Plaintiff.

47.    Eventually, they stopped and Mark was able to fall asleep to try and ignore the situation. While he was sleeping, the Defendants Kyle Mead and Liam Clarke turned Mark over on the bed, pulled down his undergarments, and started slapping his buttocks. Defendant Clark made a motion with his mouth and tongue as though he were going to lick/bite Mark's buttocks. As he woke up, Mark repeatedly told them to stop, which they ignored as they continued abusing him. At some point during the assault, other students came in from the other rooms and were watching and laughing. Defendant Logan Cuvo filmed it along with other videos. Mark attempted to pull his undergarment back to the initial position and then push the 18U members, but they continued their assault, and nobody helped or stopped the abuse.

48.    On or about the night of January 16, 2022, Defendant Kyle Mead once again took off his pants and undergarments and lunged on top of Mark, attempting to sexually assault him. Mark again repeatedly told him to stop, and again, Kyle ignored him.

49.    After Mark fell asleep that night, he woke up to Defendant Kyle Mead and another member forcing their penises on Mark's face. Defendant Kyle and the other member forced their penises in Mark's mouth, touching Mark's nose, mouth, lips, and cheeks with their penises. Upon information and belief, this incident was also recorded by Defendant Logan Cuvo, who was present.

50.    Upon information and belief, the videos of Mark being sexually assaulted and abused, which constitute child sexual abuse material ("CSAM"), were captured, possessed, and then disseminated to others via group chat and private chat. The application "Snapchat" was used to disseminate the CSAM.

51.    Upon information and belief, Defendant Kyle Mead and Defendant Liam Clarke were subsequently expelled from Gilmour because of this incident. However, Defendant Logan Cuvo graduated from Gilmour and his athletic achievements were and still are promoted on Gilmour's social media. Incredibly, Cuvo was not disciplined by the school.

52.    After these incidents of sexual abuse and assault, Mark continued playing hockey, but his performance drastically declined. As a result of the trauma he experienced, he missed a few games and all of the playoffs.

53.    Defendant, its agents, and/or employees knew or should have known that Plaintiff was being continually subjected to sexual abuse by the older students while Plaintiff was entrusted in the Defendants' care.

54.    As a result of the alleged causes of action herein, Mark suffered and continues to suffer serious physical and emotional damages.

55.    Upon information and belief, Plaintiff set forth the following allegations against Defendant.

## AS AND FOR THE FIRST CAUSE OF ACTION AS AGAINST DEFENDANT GILMOUR AND DEFENDANT COACHES FOR NEGLIGENCE, GROSS NEGLIGENCE, RECKLESSNESS, AND FAILURE TO EXERCISE A REASONABLE STANDARD OF CARE

56.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the proceeding and subsequent paragraphs as though fully set forth herein.

57.     Prior to the sexual abuse perpetrated against Plaintiff as described herein, Defendant Gilmour and Defendant Coaches, by and through its agents and/or employees, knew or should have known of the history of hazing and, specifically, of older students' propensity for the sexual misconduct perpetrated against Plaintiff.

58.     At all relevant times, Defendant Gilmour and Defendant Coaches, its agents and/or employees, had a duty to Plaintiff and similarly situated students to use the same degree of care as a reasonably prudent school employee or official would use to provide a safe and secure school environment to students, free from foreseeable harms.

59.     At all relevant times, Defendant Gilmour and Defendant Coaches, its agents, and/or employees negligently, recklessly, and carelessly breached their duty owed to Plaintiff to provide reasonable care and ensure a safe and suitable environment for him, including, but not limited to, the following:

> a.  Defendant Gilmour and Defendant Coaches failed to institute and/or implement and execute proper policies and procedures to ensure the safety of its minor students in its care, custody, and control;
>
> b.  Defendant Gilmour and Defendant Coaches failed to institute and/or implement and execute proper policies and security measures that would have prevented the older students from freely engaging in insulated, one-on-one interactions

with Plaintiff, a younger student, that resulted in foreseeable sexual abuse occurrences;

c.    Defendant Gilmour and Defendant Coaches failed to properly notify, train, and otherwise educate students and employees concerning the impropriety of sexual and non-sexual touching, and proper identification and intervention of foreseeable sexual abuse occurrences;

d.    Defendant Gilmour and Defendant Coaches failed to create and/or follow a safety protocol and any corresponding and related rules, regulations, policies, practices, and procedures that would have discovered, prevented, and/or intervened the causes of action that resulted in Plaintiff's injuries.

60.    Defendant Gilmour and Defendant Coaches had a duty and opportunity to intervene and prevent or stop the sexual abuse perpetrated against Plaintiff and failed to do so.

61.    Defendant Gilmour and Defendant Coaches, its agents, and/or employees negligently, recklessly, and carelessly assigned Plaintiff to a hotel room alone with older boys without proper supervision and forced Plaintiff to share a bed with an older boy despite knowing of the history of sexual assault/abuse/hazing in the program.

62.    Defendant Gilmour and Defendant Coaches, its agents, and/or employees failed to discover, intervene, and come to the aide or rescue of Plaintiff after placing him in an inadequately supervised and unsafe environment, wherein it was reasonably foreseeable that criminal sexual misconduct and sexual abuse would occur.

63.    Defendant Gilmour and Defendant Coaches, its agents, and/or employees failed to properly observe, supervise, and monitor areas where it was known and foreseeable that students

could be victims of inappropriate touch, sexual misconduct, sexual assault, abuse, and inappropriate relations.

64.     Defendant Gilmour and Defendant Coaches, its agents, and/or employees were negligent by failing to provide sufficient, competent, and qualified personnel for the care and supervision of Plaintiff and other similarly situated students in failing to enact, adopt, and enforce a program intended to create an environment that is free from inappropriate touch, sexual misconduct, sexual assault, hazing, and abuse.

65.     As a direct and proximate result of Defendant Gilmour and Defendant Coaches, its agents' and/or employees' negligence, gross negligence, negligent supervision, and careless and reckless conduct, Plaintiff sustained in the past and will sustain in the future pain and suffering.

66.     Plaintiff sustained said injuries by reason of carelessness, recklessness, breach of duties, and negligence of Defendant Gilmour and Defendant Coaches, its agents, and/or employees, all without any negligence on the part of Plaintiff.

### AS AND FOR THE SECOND CAUSE OF ACTION AS AGAINST DEFENDANT GILMOUR AND DEFENDANT COACHES FOR NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION

67.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the proceeding and subsequent paragraphs as though fully set forth herein.

68.     At all times material, Defendant Gilmour and Defendant Coaches had a duty to properly train and educate its employees on the detection, intervention, and prevention of foreseeable sexual abuse and hazing and to reasonably ensure the health, safety, and welfare of students at the Academy.

69.     At all times material, Defendant Gilmour and Defendant Coaches had a duty to ensure that all of its employees, agents, and contractors were properly certified and qualified and, therefore, had undergone proper training to care for the students attending the Academy.

70.      At all times material, Defendant Gilmour and Defendant Coaches had a duty to institute, execute, and train employees on the proper policies and security measures to protect students against sexual abuse, hazing, and other conduct that may jeopardize the health, safety, and welfare of the students traveling off school premises for a hockey game.

71.     Defendant Gilmour and Defendant Coaches, its agents, and/or employees breached their duty owed to Plaintiff by failing to properly train and educate their employees, agents, and contractors on the detection, intervention, and prevention that would have prevented and mitigated the sexual abuse and hazing perpetrated against Plaintiff.

72.     At all times material, Defendant Gilmour and Defendant Coaches had a duty to properly supervise, observe, inspect, monitor, and investigate all areas and places where it was reasonably foreseeable that child sexual abuse and hazing could occur without proper supervision, including the hotel rooms servicing the Gilmour hockey team.

73.     At all times material, Defendant Gilmour and Defendant Coaches had a duty to supervise and monitor its employees, agents, and contractors to ensure the employees were properly supervising, observing, inspecting, monitoring, and investigating all areas where it is reasonably foreseeable that child sexual abuse and hazing would occur, including at the hotel rooms servicing the Gilmour hockey team.

74.     Defendant Gilmour and Defendant Coaches, its agents, and/or employees failed to properly supervise and take appropriate measures to properly supervise, observe, inspect, monitor, and investigate the hotel rooms servicing the Gilmour hockey team.

75.     Defendant Gilmour and Defendant Coaches, its agents, and/or employees unreasonably ignored events preceding the sexual misconduct, which indicated a risk of harm to plaintiff, triggering the need for protective action.

76.     Defendant Gilmour and Defendant Coaches, its agents, and/or employees failed to ensure adequate supervision over the children residing in the hotel rooms during the Gilmour hockey game weekend.

77.     Defendant Gilmour and Defendant Coaches, its agents, and/or employees breached their duty owed to plaintiff to supervise and monitor their own employees, agents, contractors, students, and team members to ensure they were properly supervising, observing, inspecting, monitoring, and investigating the students/members of the team and/or hotel rooms servicing the Gilmour hockey team.

78.     As a direct and proximate result of Defendant Gilmour and Defendant Coaches, its agents' and/or employees' inaction and/or lack of attention, negligent training, and negligent supervision, Plaintiff sustained in the past and will sustain in the future pain and suffering.

79.     Plaintiff sustained said injuries by reason of carelessness, recklessness, breach of duties, and negligence of Defendant Gilmour and Defendant Coaches, their agents, and/or employees all without any negligence on the part of Plaintiff.

**AS AND FOR THE THIRD CAUSE OF ACTION AS AGAINST DEFENDANT LIAM CLARKE, DEFENDANT LOGAN CUVO, AND DEFENDANT KYLE MEAD FOR RECEIPT AND POSSESSION OF CHILD PORNOGRAPHY, 18 U.S.C. § 2252 and 2252A**

80.     Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully incorporated herein.

81.     Plaintiff was a minor and victim of Defendants' violation of 18 U.S.C. § 2252, which prohibits the knowing receipt of a visual depiction of a minor engaging in sexually explicit

conduct, and 18 U.S.C. § 2252A(a)(5)(B), which prohibits the knowing possession or receipt of a visual depiction of child pornography.

82.     Defendant Kyle Mead knowingly solicited, manufactured, received, and possessed child pornography depicting Plaintiff.

83.     Defendant Logan Cuvo knowingly solicited, manufactured, received, and possessed child pornography depicting Plaintiff.

84.     Defendant Liam Clarke knowingly solicited, manufactured, received, and possessed child pornography depicting Plaintiff.

85.     Defendant Gilmour knowingly accessed with intent to view child pornography depicting Plaintiff.

86.     Plaintiff suffered personal injury, including physical, psychological, financial, and reputational harm, as a result of Defendants' violations of 18 U.S.C. § 2252 and 2252A and is, therefore, eligible to sue and recover damages and other forms of relief under 18 U.S.C. § 2255 and 18 U.S.C. § 2252A(f).

87.     Defendant's conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights.  At a minimum, Plaintiff intends to seek statutory liquidated damages in the amount of $150,000 against each Defendant, as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, pre-judgment and post-judgment interest, and such other relief as the Court deems appropriate, pursuant to 18 U.S.C. § 2255(a) and 18 U.S.C. § 2252A(f).

**WHEREFORE,** in consideration of the above claims, Plaintiff requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendants, and that the jury selected award damages to the Plaintiff in an amount which will effectively prevent other

similarly caused acts and adequately reflects the enormity of the Defendant's wrong and injuries to the Plaintiff due to the Defendant's faulty conduct, including but not limited to:

      a.     All available compensatory damages for the described losses with respect to each cause of action;

      b.     Past and future medical expenses, as well as the costs associated with past and future life care;

      c.     Past and future lost wages and loss of earning capacity;

      d.     Past and future emotional distress;

      e.     Consequential and/or special damages;

      f.     All available non-economic damages, including without limitation pain, suffering, and loss of enjoyment of life;

      g.     Punitive damages with respect to each cause of action;

      h.     Reasonable and recoverable attorney's fees;

      i.     Costs of this action; and

      j.     Pre-judgement and all other interest recoverable.

Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

## **<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 15, 2025

                                 Respectfully Submitted,

**THOMAS LEGAL COUNSELORS AT LAW, LLC**

KATHLEEN R. THOMAS
New York State Bar No. 5348198
One World Trade Center
85th Floor, Suite 8500
New York, NY 10007
Tel: 917-508-9698
Fax: 917-591-3335
Kat@tlclawllc.com

**MARSH LAW FIRM PLLC**
*/s/ Margaret E. Mabie*
MARGARET E. MABIE
New York State Bar No. 5760731
31 Hudson Yards, 11th Fl.
New York, NY 10001
Tel: (212) 372-3030
Fax: (833) 210-3336
Margaretmabie@marsh.law
*Attorneys for the Plaintiff*

- 17 -